### LEVANTIA S. CARPENTER *vs.* ZARA H. BLAKE.

In an action against a physician and surgeon, to recover damages for negligence and malpractice in the setting and treatment of a dislocated limb, it is for the jury to say whether, upon the evidence, it is established to their satisfaction that the defendant did not use the means which experience has shown to be proper and necessary in order to justify a surgeon in assuming that he has restored the bones to their places.

Where, after a dislocated arm has been attempted to be set, there is a protuberance at the elbow joint, plainly to be seen, such protuberance being evidence, to a surgeon, that the bones are not in their place, it is for the jury to say whether the failure of the attending surgeon to discover this evidence of the omission to restore the bones to their places is evidence of want of attention, or want of skill; and if it is evidence of either, it is very significant.

Where the surgeon setting a dislocated limb did not use a sling, after the operation, and medical witnesses differed as to the necessity of a sling, in such a case ; *held* that it was for the jury, after weighing the reasons assigned for and against the use of it, to say whether it was negligence in the surgeon to omit the sling, or not.

If writers on the treatment of dislocations, or if, in the absence of such authority, practical surgeons, prescribe a mode of reducing them, and of treating the joint after the bones are replaced, it is incumbent on surgeons called to treat such an injury to conform to the system of treatment thus established ; and if they depart from it they do it at their peril.

If, in case of dislocation of the elbow joint, it is enough for the physician to replace the bones and to put the arm on a pillow, with the part below the joint at a right angle with that above it, and directing the application of cold water, it would seem to be proper, if not necessary, that the attending surgeon should inform the patient, or those in charge, of the necessity of maintaining that position ; and if there is a tendency in the limb to become straight, or if there is great pain, rendering the patient nervous and restless, the danger should be disclosed, to the end that all proper precaution may be taken to prevent it. An omission to give the warning, in such a case, is culpable negligence.

Although it is the right of a surgeon to give up the care of a dislocated limb at any time, especially with the patient's assent, yet if he insists upon that assent as a shield from liability for any negligence of which he may have been guilty, or for any malpractice committed, it is competent for the plaintiff to show, if she can, that her consent was obtained by representations that were false, and if shown to be false, the consent is no protection to the defendant against liability for damages that had occurred before the consent was given.

In order to meet any defense resting on the plaintiff's consent to the defendant's discharge, it is not necessary to allege the falsity of the representations, in the complaint. But if the plaintiff intends to recover damages resulting

## Carpenter *v.* Blake.

from the omission to call in surgical aid because she reli[...] resentations, it is necessary that they should be alleged i[...]

In an action against a surgeon for malpractice, it would b[...] ...struct the jury that it is not material whether the defendant wa[...] ...s not skillful in his profession.

One holding himself out as a surgeon is liable as well for v int of skill as for negligence; and the injured party may bring his action to recover for damages resulting from both, and recover on proving damages resulting from either.

Where the judge charged the jury, in an action for malpractice, that it was immaterial to the inquiry before them whether the defendant, at the time, was or was not reputed to be, or was or was not, a skillful surgeon; that the question was, did he bring to the treatment of the particular case that reasonable degree of skill ordinarily possessed by the members of the profession to which he belonged—the average skill of his profession; *Held* that by this language the judge must be understood to mean that if a surgeon docs not bring to the treatment of an injury, or of a disease, the ordinary amount of skill possessed by those in the same profession, it is immaterial how high his standing may be; that if he has the skill and does not apply it, he is guilty of neglect; that if he does not have it, then he is liable for want of it; and that whether a surgeon possesses ordinary skill may be material in an action for malpractice, but not whether he possesses a higher degree of skill. And that so construed, there was no objection to the charge. *Aliter* had the plaintiff sought to recover on the ground that the defendant did not possess ordinary skill.

In such a case, the questions to be decided are, 1st. Whether the defendant possessed the ordinary skill of persons acting as surgeons; and 2d. If he did, whether he was chargeable with negligence in not applying it in his treatment of the plaintiff. Whether he possessed greater skill, or had been successful in the treatment of other patients, is wholly immaterial.

Where the judge charged the jury that it was impossible to show that a surgeon possessed the skill required, except by showing what skill he applied in the treatment of the particular case; it was *held* that if this part of the charge was to be construed by itself, without reference to other parts of it, the proposition could not be supported. But that if construed (as the context warranted,) as an instruction that the defendant was required to have an ordinary degree of skill, and whether he had any more was wholly immaterial, it was correct.

That a physician or surgeon possesses skill, may be shown by the testimony of members of the same profession who can speak from personal knowledge of his practice. When the point in issue is, whether skill was applied in a given case, the possession of skill, without proof that it was applied, would be no defense to an action for malpractice. But there may be cas[...] in which such proof is admissible. *Per* MULLIN, P. J.

When it is proved that the surgeon has omitted, altogether, the establ[...] mode of treatment, and adopted one that has proved to be injurious, ev[...]

Carpenter *v*. Blake.

eputation for skill, is wholly immaterial, except to show (what ... ... es) that he possesses the ordinary degree of skill of persons enga... ... same profession. In such a case, it is of no consequence how much skill ... ay have; he has demonstrated a want of it, in the treatment of the particular case.

The failure to use skill, if the surgeon has it, may be negligence; but when the treatment adopted is not in accordance with established practice, but is positively injurious, the case is not one of negligence, but of want of skill.

A refusal to charge that if the negligence of the plaintiff contributed to the injury, the defendant was not responsible, is not erroneous, when put upon the ground that there was no evidence, in the case, of the plaintiff's negligence; or, if there was any negligence, it was the result of ignorance on the part of the plaintiff as to how the injured limb should be treated, which ignorance it was the duty of the defendant to remove.

Where the judge charged the jury that a surgeon "contracts that he will bring to the case that ordinary and reasonable degree of skill which is possessed by the average of his profession;" that "he undertakes to bring to the case the exercise of that reasonable degree of skill ordinarily possessed by the members of the profession"—adding the remark—"I think it the reasonable rule that he is required to exercise the *average skill* of his profession;" *Held* that the judge having first laid down the rule correctly, a change of phraseology, in the latter part of the instruction, did not change the rule; it being obvious that in the last sentence he did not intend to modify or vary the rule previously stated.

If the case is a new one, the patient must trust to the skill and experience of the surgeon he calls. So must he if the injury or disease is attended with injury to other parts, or other diseases have developed themselves for which there is no established mode of treatment. But when the case is one as to which a system of treatment has been followed for a long time, there should be no departure from it, unless the surgeon who does it is prepared to take the risk of establishing, by his success, the propriety and safety of his experiment. *Per* MULLIN, P. J.

APPEAL by the defendant from a judgment entered upon the verdict of a jury.

The action was brought to recover damages for the alleged negligence and malpractice of the defendant, as a physician and surgeon, in the setting and treatment of a dislocated arm of the plaintiff.

The jury rendered a verdict in favor of the plaintiff for ?000. The facts appearing in evidence, and the legal ...stions arising upon exceptions taken at the trial, are ...iently detailed in the opinion of the court.

Carpenter *v.* Blake.

*H. R. Selden,* for the appellant.

I. The motion for a nonsuit should have been granted. 1. The testimony, as well on the part of the plaintiff as that of the defendant, establishes the entire propriety of the defendant's practice, both in reducing the dislocation, and in the treatment of it, with only this qualification, that some of the surgeons thought it would have been better to place the arm in a sling; while others thought it would be better without. 2. The dislocation was properly reduced, by the defendant, and the arm remained in place until the case of the plaintiff passed into other hands. This is proved by the testimony of the defendant, and of Dr. Endress; and there is no evidence in the case to contradict them. Nothing in the case can furnish the slightest ground for argument in opposition to this evidence, except the fact that, two months later, the bones of the elbow were out of place. If no explanation of this fact were furnished by the evidence, it would present no ground for a verdict, against the testimony of Drs. Blake and Endress. It would not be sufficient to raise even a suspicion that their testimony was not correct; much less a ground for disregarding it. But aside from the improbability—we might almost say impossibility—of two surgeons of such experience and skill as the defendant and Dr. Endress being mistaken in such a matter, the evidence of the ease with which reluxation of the elbow joint may be produced, especially where the rupture of the ligaments and muscles is so great as it obviously was in this case, renders it entirely certain that such reluxation took place after the defendant ceased to have charge of the case. 3. In regard to the use of the sling, it was not necessary, nor would it have been good practice to use it. All the surgeons who favor the use of a sling do so, mainly, on the assumption that the patient was to be up, and walk about. Two, only, say that they would use it where the patient was to keep to his bed, as in this case; and one of those

Carpenter *v.* Blake.

obviously had some personal pique against the defendant. Looking at the question both in the light of science and common sense, the evidence as to the necessity or propriety of the use of a sling, in this case, demonstrates not only that a sling was not needed, but that the use of it would have been injurious, rather than beneficial. 4. The question, however, in consideration here is not whether the use of the sling would have been proper, or whether its use was needed; but whether such use was so clearly demanded that the failure to use it amounted to professional misconduct. On this subject there is not a particle of evidence in favor of the plaintiff, who holds the affirmative; but on the contrary, the proof shows that the failure to use the sling was most judicious practice. At all events, the use or omission of it was a proper subject for the exercise of that discretion which the testimony, as well as every man's sound judgment, determines must be exercised by the surgeon, in reference to the condition of each particular case. For a very clear and accurate statement of the law applicable to such a state of facts, see the opinion of the court, in *Leighton* v. *Sargeant*, (7 *N. H.* 474, 475,) quoted under the last point below. The complaint alleges as malpractice only the neglect to use bandages and splints; not the omission of a sling. The want of a sling was an after thought, suggested by Dr. Campbell's testimony. 5. For another reason, this question of the use of a sling furnishes no ground whatever for maintaining the suit, and has no bearing in opposition to our motion. Whether the use of the sling was demanded by good practice or not, the plaintiff cannot complain of the want of it, if its omission caused her no injury; as clearly it did not. The only object of the sling is to keep the arm flexed at a right angle; and the evidence shows, clearly, that the bones were in place, and the arm flexed at a right angle, so long as the defendant remained in charge of the case. 6. The leaving of the plaintiff in

Carpenter v. Blake.

charge of her family physician furnished no ground of complaint on her part. (a.) He had a right to cease treating the case at any time when no immediate attention to it was needed; whether the plaintiff called any other physician or not, and whether she assented or not. (b.) If that be not so, she assented, and of course cannot complain. (c.) There is nothing in the representations which he made, when taking his leave, of which the plaintiff can complain. In the first place, if the representations were false, and even fraudulent, they are not alluded to in the complaint, and could form no basis of recovery in this suit. (*Beamus* v. *Howard*, 3 *Watts*, 255.) But the representations, assuming the plaintiff's version of them to be the true one, were perfectly correct; the arm was "all right, or in a condition to be all right in time;" and it would have been all right now if it had been properly attended to afterwards. Dr. Anderson visited the patient often enough, at that time, to have discovered it if any thing was wrong, and doubtless would have done so. Mrs. Carpenter says that she discovered a protuberance at the elbow, at the time of the accident, and again about two weeks afterwards. This doubtless indicates about the time when the reluxation took place. And it is not difficult to discover the cause of the reluxation. She said to Dr. Endress, "it wasn't comfortable in that position (at right angles,) and I kept bending it, and the more I bent it the more straight it became, until I got it perfectly straight." Mrs. Carpenter qualifies this by stating that she said "on account of the pain, it had naturally straightened out. Not that she straightened it out." Of course this makes no difference, the point being that the *arm became straightened out;* the evidence showing that if it became straightened, no matter how, *reluxation was inevitable.* Dr. Reynale testifies that the arm manifested "an irresistible tendency to straighten out." The probability is that this tendency was owing to the aid which it got in that

direction from the patient, as stated by her to Dr. Endress; but whatever was the cause, it accounts for the reluxation.

To repeat the grounds of the motion. 1st. The manner of reducing the dislocation adopted by the defendant was judicious. 2d. The reduction was properly done. 3d. The treatment afterwards was such as the case required. 4th. If the practice was not the best which the case admitted of, it was such as judicious surgeons might with propriety adopt. 5th. No injury resulted to the plaintiff from the departure, if there were any departure, from the best possible practice. 6th. The defendant had a right to cease treating the case when he did; and besides, she assented to his doing so. 7th. False or mistaken representations are not within the issue; and if they were, the statements made by the defendant were strictly true. 8th. The evidence is substantially conclusive that the fault in treatment, if there were any fault, occurred after the defendant had ceased to have any care of the case.

These propositions we regard as not only presumptively, but conclusively established in the defendant's favor; and they leave, so far as we can discover, no ground established by the plaintiff upon which she could be entitled to recover.

The defendant did not fail in the exercise of the *very best surgical skill;* but if he did, he certainly did not fail in the exercise of that *reasonable care and skill* which is all that the law required, until he was dismissed from the case. (*Leighton* v. *Sargeant,* 7 *Foster,* 460, 472, 474, 475, *quoted below.*) Under these circumstances, it was the duty of the court to arrest the case, on this motion.

II. The exception to that part of the charge which states that it is entirely immaterial whether Dr. Blake was or was not a skillful surgeon, was well taken. The complaint charges that the defendant "represented himself to be * * a scientific, skillful and competent physician and

surgeon;" and that the plaintiff "by the *ignorant,* unskill-ful, careless and negligent treatment by the defendant, was greatly damaged," &c. The question of the defendant's ignorance or skill was directly in issue—made so by the plaintiff—and although it was not the essential point of the case, which involved the question how the defendant applied his skill, as well as whether he possessed it, it was not wholly immaterial. *Leighton* v. *Sargeant,* (7 *Foster, N. H.* 460,) is directly in point, on this question. If evidence of the fact of such skill was admissible, it was certainly erroneous to instruct the jury that the fact was immaterial. But this objection to the charge has a deeper significance. It is obvious from that part of the charge under considera-tion, that the defendant's counsel had insisted, before the jury, that the defendant possessed the ordinary skill of his profession, and that if in this case he exercised that skill with ordinary care and diligence he had discharged his whole duty. This position was strictly correct; and it should not have been qualified, as it was, by the part of the charge excepted to. (*Leighton* v: *Sargeant, supra.*)

III. The statement to the jury that it was "impossible to show that a surgeon possessed the skill required, except by showing what skill he applied in the treatment of the particular case," was erroneous, and the exception to it is well taken.

The legal *prima facie* presumption is that the surgeon possesses and exercises the skill which the case requires; and the burden of showing the contrary, in a case like this, rests upon the plaintiff. To recover, the plaintiff should show that the defendant did not possess, or did not exer-cise, ordinary skill. The judge's charge would require the *defendant to prove* that he did possess and exercise ordi-nary skill, whether any proof was given by the plaintiff to the contrary or not. It would completely change the bur-den of proof from the plaintiff to the defendant. "In an action against a physician or surgeon, the plaintiff must

affirmatively prove all the elements of the negligence charged, including the defendant's want of knowledge or skill, where that is relied upon." (*Sh. & Redf. on Negligence*, § 442.) This instruction also involves the error that a surgeon is to be judged by the *result* of his practice, not by its fitness or propriety.

IV. The instructions to the jury that if the defendant "withdrew from the case while the plaintiff labored under a mistaken opinion that the joint had been properly reset, and was in a way to recover without further surgical aid, and that mistaken opinion in her mind was induced by his representation, or his conduct, then he did not end his responsibility for the case by withdrawing from it as he did," were erroneous.

This, although not intrinsically the most important, is perhaps the part of the charge of which the defendant has most reason to complain, on account of its probable effect upon the minds of the jurors. It probably produced the verdict of which the defendant complains. We insist that the entire scope of this instruction, (looking at what precedes and what follows the matter excepted to,) is wrong. 1. It will be observed that the instruction *assumes* that the defendant had discharged his entire duty in the case *up to that time*. It places the defendant's liability upon two positions; *first*, upon his quitting at the time that he did; and *second*, upon the belief of the plaintiff as to her condition, produced by what he had said and done. The charge puts him in the wrong, without any *previous* default or misconduct. 2. It assumes that he had not a right to withdraw from the case without the plaintiff's assent. No surgeon, in the absence of a special agreement, is bound to continue his attendance upon any such case. The defendant was not the family physician, but was called in an emergency, which required instant surgical skill, when no other was at hand. Having discharged that immediate duty, he had a right to dismiss the case, with or

without reason, and with or without explanation, at any time when the case required no immediate attention from him. *Shearman & Redfield*, in their treatise on *Negligence*, (§ 441,) have laid down a somewhat more stringent rule than this; but they cite no authority, and when the question shall be fully considered, we are confident their position cannot be sustained. The parallel which those authors institute, between surgeons and attorneys, is not a just one. The employment of attorneys has nothing of the sudden and imperative character of the employment of surgeons and physicians. And the most common experience teaches us that surgeons often, indeed generally, in difficult cases, perform the most important operations, and neither give, or expect to give, any further attention to them. They cease their attention when, in their judgment, they may safely do so; and they do this as a matter of *right*, and not of *license*. Of course they cannot, without just cause, depart in the midst of an important operation, or at any time when the case demands their immediate attention. But, subject to this limitation, they must be free to cease their attendance, as the request to charge on this subject states "upon reasonable notice," with or without license. A notice in the midst of an important operation, or when *immediate* attendance was demanded, would not be "reasonable notice." Suppose we reverse the case, and inquire whether the patient could discharge the surgeon. If one party is bound by contract, the other must be bound. If the surgeon is bound to continue his attendance, the patient is bound to allow him to continue. But did any one ever suppose that the patient could not dismiss the surgeon at any time, with or without cause, in the absence of express agreement? The position of the surgeon may well be likened to that of counsel in an action, called upon in an emergency to try an issue, or argue a motion, in the absence of the attorney, or one which, for any reason, it was not thought proper to leave

to the attorney. No one ever supposed that counsel were bound beyond the discharge of such limited and special duty. 3. If the circumstances of the defendant's leaving be material, the plaintiff had nothing to complain of, in that respect. He left her in the care of her family physician, who, we are bound to presume, was as capable and faithful as the defendant; and the proof shows that he was diligent in his attendance. 4. The defendant was not responsible for any "mistaken opinion in the plaintiff's mind," even though it were induced by his representations, or his conduct. (a.) There is no charge, in the complaint, of any fault of this kind, and it is not therefore available to the plaintiff, even if it existed. The defendant could not, from anything in the complaint, anticipate such a charge, and could not be prepared with proof to meet it. (See Beamus v. Howard, supra.) (b.) The charge makes the defendant's liability to rest, not upon what he said or did, nor upon his intentions in what he said or did, but upon the impression made upon the plaintiff's mind thereby. 5. It is not, perhaps, material upon the legal question which the charge presents, but if it be material, the evidence shows that what the defendant said was true, admitting that he said what the plaintiff mentions. The arm, at that time, was "all right." The meaning of this expression obviously was, that it was all right to that time.

V. The refusal to charge "that the defendant had the right to relinquish his care of the case, upon reasonable notice," was erroneous. We have already argued this point.

VI. The court should have instructed the jury "that if the negligence of the plaintiff contributed to the injury complained of, the defendant was not responsible." The correctness of this request cannot be disputed, if there was any evidence of negligence on the part of the plaintiff. (4 N. Y. 359, 360. Sh. & Red. on Negligence, § 443.) We submit that there was not only some evidence, but ample

Carpenter *v.* Blake.

evidence, to charge her with negligence. A consideration of the whole case, as presented under the first point, is necessary to show how strong the evidence is, that the injury resulted from the plaintiff's negligence, after the defendant ceased to have charge of the case. On this question we have a right to assume that the arm was "all right" when the defendant ceased to attend upon it, because the jury have so found. We think, as has been shown, that the jury was bound to find so—that there was *no evidence* to the contrary; but it is sufficient, for the present purpose, that they *may have found so.* The question must then arise, to whose fault was due the subsequent reluxation, and its attendant results? Could it be said that it was the fault of the defendant? He had nothing whatever to do with it. The evidence was infinitely more strong, that the reluxation was the fault of the plaintiff than any which the case affords of misconduct or negligence on the part of the defendant. Surely it was error to refuse to submit the consideration of that question to the jury on the ground that there was no evidence bearing upon it.

VII. The rule of responsibility of the surgeon, laid down by the judge, "that he is required to exercise *the average skill* of the profession," is erroneous, and although not directly covered by any exception, it is worthy of consideration, as it was strongly calculated, if erroneous, to mislead the jury. The true rule is, that the surgeon is bound to possess, and exercise, "the reasonable and ordinary skill" of the members of his profession. The difference between these expressions is very great. The rule as laid down by the judge would exclude from the practice of either medicine or surgery, one half of those professions. Only half could stand "above the average," and only those could practice safely. All that the true rule requires is, that the practitioner shall possess such skill as is common *to all* the well educated members of the pro-

fession; and we venture to say that no case can be found, except this, where the skill of the upper half only of the profession has been made the standard. (*See Sh. & Red. on Neg.* §§ 433, 436, 437; *Leighton* v. *Sargeant*, 7 *Foster*, *N. H.* 460.)

The subject of the extent, and limitations, of the liability of surgeons, in such cases, is so fully and accurately presented in the case last cited, covering most of the points we have discussed, that we offer as the sum of our argument the following extracts from the opinion of the court, in that case.

The extent of the physician's or surgeon's engagement is, 1st. "That he possesses that reasonable degree of learning, skill and experience which is ordinarily possessed by the professors of the same art or science, and which is ordinarily regarded by the community, and by those conversant with that employment, as necessary and sufficient to qualify him to engage in such business;" and 2d. "That he will use reasonable and ordinary care and diligence in the exertion of his skill and the application of his knowledge, to accomplish the purpose for which he is employed. He does not undertake for extraordinary care, or extraordinary diligence, any more than he does for uncommon skill." (Pages 469, 471.) "In stipulating to exert their skill and apply their diligence and care, medical and other professional men contract to use their best judgment. Few cases can be supposed, where but a single course of measures can be adopted, and many must occur where great differences of opinion may exist, as to the best course to be taken. In most cases, judgment and discretion are required to be exercised. Freedom from errors of judgment is never contracted for by the attorney or the physician. Ordinary good judgment is necessarily implied in the possession of ordinary skill, and if such share of judgment is fairly exercised, any risk from mere errors and mistakes is upon the employer alone. He, too, has judg-

ment to exercise in the selection of the physician or the lawyer whom he will employ; and if he makes a bad selection—if he fails to choose a man of the best judgment—the result is fairly to be attributed to his own mistake, and is not to be visited upon the man who has honestly done his best endeavor in his service. It is in accordance with these views that it has often been decided that a professional man is not responsible for errors of judgment, for mere mistakes, in cases of reasonable doubt and uncertainty." (Page 472.)

" The treatment of diseases, and that of wounds and fractures, must be more or less varied with the changes of climate and seasons, and with the peculiarities of persons and places. Cases of sickness and accident, apparently similar, may yet be rendered substantially different by seemingly slight circumstances, easily overlooked, and sometimes difficult of detection. If this is so, the doubts and uncertainties which surround the medical and surgical practitioner, and the errors and mistakes to which he is unavoidably exposed, may well furnish a satisfactory explanation of unfavorable results, where a jury are satisfied of the reasonable skill, diligence, attention and care exhibited in the treatment." " To charge a physician or surgeon with damages on the ground of unskillful or negligent treatment of his patient's case, it is never enough to show that he has not treated his patient in that mode, or used those measures, which in the opinion of others, even medical men, the case required; because such evidence tends to prove errors of judgment, for which the defendant is not responsible, as much as the want of reasonable care and skill, for which he may be responsible. Alone, it is not evidence of the latter, and therefore the party must go further, and prove, by other evidence, that the defendant assumed the character, and undertook to act as a physician, without the education, knowledge and skill which entitled him to act in that capacity. That is,

he must show that he had not reasonable and ordinary skill; or he is bound to prove in the same way, that having such knowledge and skill, he neglected to apply them with such care and diligence as in his judgment, properly exercised, the case must have appeared to require; in other words, that he neglected the proper treatment from inattention and carelessness." (Pages 474, 475.)

In this case, the plaintiff made no such case against the defendant as is required by the rules here laid down; and the surgeon should be protected by the court, as Lord Mansfield declared that attorneys should be, "where they act to the best of their skill and knowledge." (*Pitt* v. *Yalden*, 4 *Bur.* 2060. *See also Swinfen* v. *Chelmsford*, 5 *Hurl. & Nor.* 890, 924.)

*S. D. Faulkner*, for the respondent.

I. The appellant has misapprehended the nature of this action, and the grounds upon which it is founded. The action is not for the want of skill ; but for the failure of the defendant to use the skill, care and diligence which he undertook, by his contract, to bring to the case.

II. There seem to have been no cases in this State which fully define the undertaking and liabilities of surgeons, with one exception. There are abundant decisions on the subject, in other States, from which are deduced the following deductions of their undertaking and liabilities. 1. Physicians and surgeons who offer themselves to the public as practitioners, impliedly promise, thereby, that they possess that degree of skill ordinarily possessed by members of the profession to which they belong, and the requisite knowledge and skill to treat with reasonable success, such cases as they undertake, and such as ordinarily occur in the practice of their profession. 2. This rule does not require the possession of the highest skill, knowledge or experience, but only such as will enable them to treat the case they undertake understandingly and safely. 3. The

Carpenter *v.* Blake.

law further implies that in the treatment of all cases which they undertake, they will exercise reasonable and ordinary care and diligence, and give the case attention proportionate to the delicacy and importance of the operation and case. 4. They are bound to use their best skill, judgment, care and diligence to secure a perfect restoration of their patients to health and soundness. And they are to be held strictly liable, for their practice relates to the life and health of their patients. 5. They do not impliedly warrant the recovery or restoration of their patients, and are not liable for a failure to restore, unless such failure is the result of some default of their own duty as above defined. 6. If the settled practice and law of the profession allow but one course of treatment, in the case, then any material departure from such course might properly be regarded as the result of the want of care and attention. (*Patten* v. *Wiggin*, 51 *Maine*, 594. *Ritchey* v. *West*, 23 *Ill.* 385. *Long* v. *Morrison*, 14 *Ind.* 595. *Bellinger* v. *Craigue*, 31 *Barb.* 534. *Wood* v. *Clapp*, 4 *Sneed*, [*Tenn.*] 65. *Candless* v. *McWha*, 23 *Pa.* 261. *Bowman* v. *Woods*, 1 *Iowa*, 441. *Landon* v. *Humphrey*, 9 *Conn.* 209. *Leighton* v. *Sargeant*, 7 *Foster*, 460.)

III. When a surgeon is employed to treat a dislocated or broken limb, and makes several visits in the course of his employment, the contract he enters into is *entire.* (*Bellinger* v. *Craigue*, 31 *Barb.* 534, 538. 1 *Chitty on Cont.* § 483. *Ritchey* v. *West*, 23 *Ill.* 385.)

IV. When a surgeon fails in his duty to *exercise* the measure of skill, care and attention implied by his undertaking, he is liable in damages to the person employing him. (*Bellinger* v. *Craigue*, 31 *Barb.* 434. *Landon* v. *Humphrey*, 9 *Conn.* 209. *Story on Bailm.* § 431.) Either the want of the requisite skill and knowledge, which is ignorance, or the omission to exercise the requisite skill, knowledge, care and diligence, which is negligence, is the proper

foundation for an action in case of damage. The results are the same in either case.

V. This action is one brought against the defendant for negligence in his duty. The question of negligence is one for the jury, and the jury, upon abundant evidence thereof, have found against the defendant, and he is concluded. The evidence shows, conclusively, that the defendant made no examination of the arm to ascertain whether he had set it; that the symptoms presented by the arm were such as would not attend a properly reduced dislocation, and ought to have convinced him, had he exercised ordinary judgment, that he had not succeeded in setting the arm; that it was a departure from the settled practice and authorities in surgery for him to omit the ordinary and requisite tests, and to apply the proper supports to the arm, when the plaintiff was nervous and restless and likely to displace the bones if they had been set; that he was guilty of the grossest carelessness, in overlooking the deformity of the arm and its unreduced condition during the whole time from June 28, to September 1; that his carelessness and persistent assurances to the plaintiff that her arm would be all right in time, misled her, until her arm was beyond the help of any surgery. The defendant's expression regarding the arm, "I didn't care anything about it," shows that he was guilty of negligence in his duty.

VI. As to the exception to the decision denying motion for a nonsuit. There was abundant evidence of negligence and improper treatment to go to the jury. So far from the evidence showing that the defendant properly set the joint, it shows precisely the contrary; and the question was one properly submitted to the jury, who found against the defendant. The last ground upon which the nonsuit was asked is entirely untenable. If the proposition therein contained is sound, then no action for bad treatment or carelessness, however gross, could be sus-

Carpenter *v.* Blake.

tained. All the defendant would have to do would be to show that he was regularly educated as a surgeon, get his professional brethren to swear that he possessed the ordinary skill and learning of other members of the profession, swear, himself, that he supposed he had set the arm, and had used his best judgment, (and as to his supposition and using his best judgment he could not be contradicted, as he is in sole possession of the evidence on these points,) and his defense would be complete. He had no right to suppose he had set the arm, without using the requisite tests to ascertain whether he had reduced the dislocation. He was bound to exercise not only his best judgment, but also to apply that ordinary skill and learning referred to in the proposition. It was entirely immaterial to the plaintiff, and to the case, how much skill or learning the defendant possessed, provided he did not *use* them for the benefit and restoration of her arm.

VII. As to the exceptions to the judge's charge and refusals to charge. The first exception to the charge was correct. The charge was, in substance, that it was immaterial whether the defendant was or was not reputed to be, or was or was not, a skillful surgeon. There had been no attack whatever made upon the defendant's skill or reputation for skill. It was conceded that he was skillful. The more skill he had, the greater his liability, in this case. The action was for an omission to *apply* to the case the requisite skill. The question for the jury was as the judge stated it. " The question is not what skill did the doctor possess, which he did not employ."

There seems to be an impression that in cases of this kind it is competent to prove that the surgeon was, or was reputed to be, skillful. This precise point, in a malpractice case, was before the Supreme Court of Pennsylvania, in the case of *Mertz* v. *Detweiler*, (8 *Watts & Serg.* 378.) The court state the true rule as follows: " Testimony as to general skill is clearly irrelevant. It was not that, but

Carpenter *v.* Blake.

his (the defendant's) treatment of the particular case, with which the jury had to do. If the latter was notoriously bad, of what account would be his abstract science, or treatment of other cases ? It may be said that his general qualifications might serve to shed light on the propriety of his practice in this particular instance; but it is light which would be less likely to lead to a sound conclusion than to lead astray. The jury, assisted by the opinions of medical witnesses, would be better able to judge of the treatment from the treatment itself, than from the more remote consideration of the defendant's professional reputation, which was consequently not the best evidence of which the case was susceptible."

As to the next exception, neither the language used in the charge, nor its import, is as assumed by the exception. The charge was that it was impossible to show that the defendant possessed the *required* skill, except by showing what skill he applied, in the treatment of the particular case, &c. The question for the jury was, did he use the required skill; not did he possess skill which he did not use. Taking the context of the part of the charge, intended to be excepted to, it is submitted that there was no error, in any view of it. The rule applicable to this point is that stated in the case of *Mertz* v. *Detweiler, (supra.)*

The next exception is to that part of the charge which stated, in substance, that the defendant was not responsible for what took place after his discharge. The fair import of the charge is, that the defendant was liable for what he had done while he was in charge of the case, and so far as his directions and conduct contributed to the arm's remaining unset. He was responsible for that condition of it, because he had told her it was all right, and she had relied upon that assurance. His undertaking was to set the arm, and give it the care and attention required of a surgeon. His language was that he was perfectly able to set the arm, and that "he considered it his due to at-

tend to the arm until it was all right." This fairly states what his contract was, and it was entire. If the plaintiff's assent to his discharge therefrom was of any use or protection to him, it must have been an assent voluntarily given, with a full knowledge of all the facts, and not one procured by fraudulent representations. It is more than evident that the chief mischief done to the arm was done the evening it was dislocated, by his not reducing the dislocation; and it was rendered permanent by his subsequent carelessness, and frequent assurances that it was all right. It was a fair question for the jury, whether he was not liable for his neglect to set the arm when first called, and for his omission to discover, between that time and the time of his alleged discharge, when it was under his sole care, that it had not been set, or that, having set it, he was liable for not protecting it by supports, from redisplacement.

· The refusal to charge, as requested, that there was no evidence from which the jury could find that the treatment of the case was not the practice adapted to the case, was entirely correct. It was wholly immaterial what skill or learning the defendant possessed. There was no controversy about that. What skill he possessed was to be inferred from the skill he applied. The jury having found, by their verdict, that he was guilty of negligence, in applying the requisite skill and learning, had they been charged as requested it would only have made his liability greater. From his neglect to exercise such learning and skill, charged as he was with the responsibility of this case, the jury might have inferred that he did not possess them. His treatment of the case, and his departure therein from the settled practice and authorities of surgery, might properly be "taken by the jury as evidence of a want of skill and learning, however high his reputation." (*Patten v. Wiggin,* 51 *Maine,* 594.) The professional witnesses of both parties agree that all the surgical authorities required

the placing of the arm at a right angle, and retaining it there, which were not done. This was the *ordinary* dislocation of the joint, easy of diagnosis and reduction, and but one course of treatment for such cases is suggested by surgical authors.

*By the Court,* MULLIN, P. J. On the 28th of June, 1866, the plaintiff was thrown from a horse she was riding, in the village of Dansville, in Livingston county, and her elbow joint was dislocated. The defendant was a practicing physician and surgeon, residing in Dansville, and was called to set the limb. The plaintiff insists that the bones were never restored to their places, or if they were, that proper measures were not taken to keep them there, and that the result is that the joint has become stiff, and the arm almost useless.

There was a verdict in favor of the plaintiff, on which judgment was rendered, and from that judgment the defendant appeals.

The defendant took sundry exceptions to the rulings of the court, in admitting and rejecting evidence, and to the charge to the jury, and to refusals to charge as requested, which I will consider in the order they are presented in the points of his counsel.

The first exception is to overruling the defendant's objection to the question put by the plaintiff's counsel to the witness, Dr. Campbell; "what would be likely to be the consequences of an omission to flex the arm and rotate it as you have described?" The reply of the witness was not an answer to the question, and he did not answer it. He said, "no; no one of the things is a certain sign that the bones are in place, and everything right; all of them put together would make it very certain that it was in. None of them would do harm, and in the exercise of ordinary prudence and care it would be the duty of the operator to resort to them." The question was repeated

without objection, and was not even then answered. The defendant was not prejudiced by the ruling.

The second exception is to overruling the defendant's objection to the following question: "What about the possibility of an arm being stiff and straight two months after a dislocation. The injury on the 28th of June being stiff and straight, and the bones in place, on the 26th of August, do you think the bones could get out of place by the 28th of August without external violence?" The defendant's counsel objected to the question on the ground that Drs. Endress and Blake had not said the arm was straight and stiff. The objection assumes that the question was predicated on the testimony of the defendant and Endress, but it does not appear that the plaintiff's counsel so intended. Indeed, there was evidence of other witnesses which would justify the assumption of the facts stated in the question. But assuming that the question was based on the evidence of Endress and the defendant. The plaintiff had testified that on Sunday, the 28th of August, she was at the defendant's house at his request, and he and Dr. Endress examined the arm. The defendant testified that on that day he examined the arm and found it perfectly straight, and the hand supinated—that is, with the palm turned up. The bones, he thought, were then in place; he did not see how it could be out of place and be straight. Dr. Endress testified that on the 28th of August the arm was straight and stiff. Dr. Endress uses the very words of the question. Dr. Blake described the arm as straight, and says that he supposed the stiffness of the arm was caused by the muscles, thus assuming that the joint was stiff, as it unquestionably was; from the time it was set, stiffness was one of the natural results of the injury, and it was to overcome it that the defendant, on repeated occasions, urged the plaintiff to rotate and flex it. No injnry was done to the defendant in assuming as a fact what was repeatedly proved, and repeatedly re-

ferred to, by the defendant himself, that the joint was stiff, although the words straight and stiff may not have been used together at the time referred to in the question.

The plaintiff's counsel embraced in one of the questions on the subject, the condition of the arm on the first of September, the day on which the arm was reset by Drs. Reynale, Endress and Blake. After administering chloroform, the arm was readily bent, and this bending was relied on by the defendant's counsel as evidence that the bones, on that occasion, were in their places, and if they were then in their places, that they were so from the time they were originally set. To meet and rebut this proof, physicians were afterwards called by the plaintiff to testify that it was possible to bend the joint to a very considerable extent, even if the bones were not in place. When Dr. Moore saw the arm, in the latter part of August, the joint was then dislocated, and of course the bones were not in their places; and unless they could be thrown in and out of place, at the will of the plaintiff, or by the action of the muscles alone, the inference might be that they were not in place on either of the occasions when examined by the defendant, Endress and Reynale. I cannot agree with the defendant's counsel, that the word "stiff" is used in the question in the sense that the arm had become rigid from the adhesion of the bones at the joint. It meant, in the question, precisely what is meant in the testimony of the defendant and Endress—whether it was caused by the muscles or by the adhesion of the bones. There was not a false assumption of the facts stated in the question, and the objection was properly overruled.

The 3d exception is that the nonsuit was improperly refused. The motion for a nonsuit rested on the proposition that there was no evidence in the case that would justify the finding by the jury that the defendant had been guilty of any neglect or want of the requisite care and skill in

Carpenter *v.* Blake.

reducing the luxation in the first instance, or in the treat-
ment of the arm afterwards. The defendant's counsel in-
sists that the dislocation was properly reduced, and the
joint remained in its place until the defendant was dis-
charged, and another surgeon called. Whether this prop-
osition was established, was a question for the jury upon
conflicting evidence, and they have found against the de-
fendant; and that finding we cannot disturb. All the
surgeons agree that the general rule is, that in cases of
dislocation the patient is able to know when the bones are
restored to their places, by the noise made when they fall
into place, and by the immediate relief from pain. The
plaintiff did not hear the "snap," as it is called, nor was
the pain lessened. On the evidence, the jury were justi-
fied in finding that the bones were never restored to their
places; and no surgeon, except the defendant and Endress,
has ventured to express an opinion that the dislocation was
ever reduced. The defendant says that when he set the
joint, he extended and rotated the arm, and thus satisfied
himself that the bones were in place. The plaintiff says
he did neither. It may be that the defendant was in bet-
ter condition to know what he did on that occasion, and
to remember it, than the plaintiff; but it was for the jury
to say to which they would give credit; and there are
circumstances which tend to show that the defendant did
not bestow either much time or attention to setting the
joint and dressing the arm. It is conceded, on all hands,
that it was his duty to apply his hands, and thus satisfy
himself that the bones were brought into place; and
whether brought into place, could be ascertained with rea-
sonable certainty by reference to the position of the con-
dyles and olecranon process. The defendant says he
applied these tests, and the plaintiff says he did nothing
but draw the arm around his knee and place it on a pillow
at her side, bent to nearly a right angle. The plaintiff's
sister and niece were present, but neither were inquired

of whether he did or did not do what he claims to have done. It would seem that when the limb extends and rotates freely, it is ordinarily sufficient evidence that the bones are in place. But if there is any doubt about it, it is the duty of the surgeon to measure the arm. This the defendant concededly did not do. It was for the jury to say, whether, upon the evidence of the plaintiff and defendant, it was established to their satisfaction that the defendant did not use the means which experience has shown to be proper and necessary, in order to justify the surgeon in assuming that he had restored the bones to their places, and thus secured the patient from great suffering, and, perhaps, the loss of the use of the limb.

The plaintiff and the witness, Leach, saw the protuberance at the elbow joint the night of the injury, and Miss Miller says it was spoken of that evening, at the house; it was so prominent as to attract the attention of Leach; he compared it with the other elbow, and inquired what it was. Now, this protuberance was evidence, to a surgeon, that the bones were not in their place; it was plain to be seen, as there was, at the time the defendant set the joint, and afterwards, when Leach was there, no swelling to conceal it. It was for the jury to say whether the failure to discover this evidence of the omission to restore the bones to their places, was evidence of want of attention or of want of skill; and if it was evidence of either, it was very significant.

It appears that the arm retained, when not controlled by splints, about the same position it was in after the first attempt to reduce the dislocation, and at no time could the plaintiff move it without producing severe pain. The defendant insisted she must move it, and when she attempted it, the pain was so great she had to call in help, and even then had to cease the attempt, because of the suffering it caused. This was known to the defendant, and yet it does not seem to have put him on inquiry whether he had not

Carpenter *v.* Blake.

failed to properly set or treat the arm. The plaintiff was satisfied the joint was never properly set, and she so told the defendant; and to ascertain whether her suspicions were well founded, she called on Dr. Moore, and finally employed Dr. Reynale, to endeavor to restore to her the use of it. It is quite obvious that the work to be done by Reynale was not understood by him and those assisting him, to be to the patient a painless effort, as it would be if it was merely putting in place bones that would fall into and out of place by their own weight, or at the will of the patient. They prepared her for it, by rendering her so unconscious that she did not feel a pin when inserted in the flesh. They then bent the arm, and put on bandages, and she awoke to realize the suffering to which the operation had subjected her. The arm, in a short time, returned to its original position, and has remained there ever since. Now all this occurred after the defendant abandoned the arm, but it reflects very much light upon the important question in issue here, whether the dislocation was ever reduced. The evidence satisfies me that it was not, and that there was a great want of care and skill in the attempt to replace the bones, or in the subsequent treatment of the arm. The surgeons disagreed as to the necessity of putting the arm in a sling after the dislocation is reduced, some insisting that it is necessary, in order to prevent a reluxation, which might occur if the arm was left without using this means of preventing it; while others insist that it is enough to leave the cure to nature, the surgeon merely applying or directing the application of cold water to the limb, in order to keep down inflammation. The defendant did not use a sling, and it was for the jury, after weighing the reasons assigned by the surgeons, for and against the use of it, to say whether it was negligence in the defendant to omit it.

The defendant's counsel insist that as it is shown that surgeons do not agree in regard to the propriety of the

use of the sling, the jury were not at liberty to find there was negligence on the part of the defendant in omitting it. I cannot assent to this proposition, thus broadly stated. If writers on the treatment of dislocations, or if, in the absence of such authority, practical surgeons, prescribe a mode of reducing them, and treating the joint after the bones are replaced, it is incumbent on surgeons called to treat such an injury, to conform to the system of treatment thus established; and if they depart from it, they do it at their peril. In 2 *Espinasse's N. P.* 601, it is said, it seems that any deviation from the established mode of practice shall be deemed sufficient to charge the surgeon with negligence, in case of an injury arising to the patient. If, however, it is shown that surgeons have applied a different system of treatment, and found it to succeed as well or better than the one prescribed, it is not negligence to resort to the system thus practically tested. But before the new practice can be used, to shield the surgeon from the charge of malpractice, it must appear that the cases in which it was tested were substantially the same as those treated of by the writer, or with those treated by practical surgeons, and that the treatment thus resorted to has been successful in so many instances as to establish satisfactorily the propriety and safety of adopting it. The question is, as a general rule, exclusively for the jury, and in this case it was peculiarly so.

If, in case of dislocation of the elbow joint, it is enough for the physician to replace the bones, and to put the arm on a pillow, with the part below the joint at a right angle with that above it, and directing the application of cold water, it would seem to be proper, if not necessary, that the attending surgeon should inform the patient, or those having charge of him or her, of the necessity of maintaining that position; and if there is a tendency in the limb to become straight, or if in consequence of the severity of the injury to the ligaments about the joint there is great

Carpenter *v.* Blake.

pain, which renders the patient nervous and restless, thus increasing the tendency to reluxation, or to straighten, and as a consequence to stiffen the joint, the danger should be disclosed, to the end that all proper precaution may be taken to prevent it. It is insisted that these dangers were imminent, and yet no word was given. This was, in my judgment, culpable negligence; much of the suffering the plaintiff has undergone, and much of the loss she has sustained, might have been prevented, had the defendant done what it was clearly his duty to do, if he knew the consequences which might result from redislocating the joint or straightening the arm. It would seem to me that a sling would have in some degree mitigated, if not altogether prevented, the misfortune which has befallen the plaintiff.

Some stress is laid by the plaintiff's counsel upon the abandonment of the plaintiff, by the defendant, a few days after setting the joint, or rather upon the representations as made by him to her on that occasion. I agree with the defendant's counsel, that it was the right of the defendant to give up the care of the limb at any time, especially with the plaintiff's assent; but if the defendant insists upon that consent as a shield from liability for any negligence of which he may have been guilty, or for any malpractice committed, it was competent for the plaintiff to show, if she could, that her consent was obtained by representations that were false. The plaintiff swears that the defendant represented that the dislocation had been properly reduced, and that he had done for her all it was necessary to do in order to give her a sound arm. These representations, she insisted on the trial, were untrue, and that she released him from further attendance believing them to be true. In order to meet any defense resting on the plaintiff's consent to the defendant's discharge, it was not necessary to allege the falsity of the representations, in the complaint. But if the plaintiff intended to recover

damages resulting from the omission to call in surgical aid, because she relied on the alleged false representations, it was necessary that they should be alleged in the complaint. I do not understand that the plaintiff claimed to recover any such damages, and hence the necessity of the averment does not arise.

The next exception is to the charge of the judge that it was immaterial whether the defendant was or was not a skillful surgeon. It would be error to instruct a jury, in an action against a surgeon for malpractice, that it was not material whether the defendant in the action was or was not skillful in his profession. It is said in 2 *Espinasse's N. P.* 601, if a person undertakes the cure of any wound or disease, and by neglect or ignorance the party is not cured, or suffers materially in his health, he may recover damages in this action; but the person must be a common surgeon, or one who makes public profession of such business as surgeon, &c.; for, otherwise, it was the plaintiff's own fault to trust to an unskillful person, unless such person expressly undertook the cure. Being liable if he holds himself out as surgeon, as well for want of skill as for negligence, the injured party may bring his action to recover for damages resulting from both, and recover on proving damages resulting from either. (*Sear Prentiss,* 4 *East,* 348. *Slater* v. *Baker,* 2 *Wils.* 359. 1 *Wait's Pr.* 336, 390. *Bellinger* v. *Craigue,* 31 *Barb.* 534.)

In this case the plaintiff charged want of skill, as well as negligence. So far, then, as the pleading could make want of skill material, it was done. Taking the whole of the charge relating to the materiality of the question of the defendant's skill together, I am satisfied that the judge did not intend to lay down to the jury the proposition so broadly stated as I have stated it. The judge says: "I suppose it is entirely immaterial to the inquiry before you, whether the defendant, at the time he undertook the reduction of this dislocation, was or was not reputed to be,

or was or was not, a skillful surgeon. The question is, did he bring to the treatment of that particular case the degree of skill to which I have referred." The degree of skill to which he referred, was that reasonable " degree of skill ordinarily possessed by the members of the profession to which he belongs—the average skill of his profession." By this language I understand the judge to mean, that if the surgeon does not bring to the treatment of an injury, or of a disease, the ordinary amount of skill possessed by those in the same profession, it is immaterial how high his standing may be. If he has the skill, and does not apply it, he is guilty of neglect. If he does not have it, then he is liable for want of it. Whether, therefore, a surgeon possesses ordinary skill, may be material in an action for malpractice, but not whether he posseses a higher degree of skill. If this is the proper construction of the charge, and I am of the opinion that it is, I see no objection to it. If the plaintiff had sought to recover on the ground that the defendant did not possess ordinary skill, the instruction was wrong. But I do not understand that any such ground was taken; the liability of the defendant was put on the ground that he did not apply that measure of skill in the treatment of the plaintiff. It seems to me the defendant had no just ground of complaint against that part of the charge under consideration, if it is to receive the construction I have given it. If either party could justly complain of it, it was the plaintiff. I agree with the learned judge, that the questions to be decided were, first, whether the defendant possessed the ordinary skill of persons acting as surgeons; and, second, if he did, whether he was chargeable with negligence in not applying it in his treatment of the plaintiff. Whether he possessed greater skill, or had been successful in the treatment of other patients, was wholly immaterial in this case. The inquiry of the jury was brought within the proper limits.

The defendant's counsel excepted to the instruction to the jury, that it was impossible to show that a surgeon possessed the required skill, except by showing what skill he applied in the treatment of this particular case. If this part of the charge is to be construed by itself, without reference to other parts of it, I think the proposition cannot be supported. That a physician or surgeon possesses skill, may be shown by those of the same profession, who can speak from personal knowledge of his practice. When the point in issue is, whether skill was applied in a given case, the possession of skill, without proof that it was applied, would be no defense to an action for malpractice. But there may be cases in which such proof is admissible. Evidence of the reputation and standing of the defendant as a surgeon was received without objection, in *Slater* v. *Baker*, (2 *Wils*. 359.)

When it is proved that the surgeon has omitted altogether the established mode of treatment, and adopted one that has proved to be injurious, evidence of skill, or of reputation for skill, is wholly immaterial, except to show (what the law presumes) that the defendant possesses the ordinary degree of skill of persons engaged in the same profession. In such a case it is of no consequence how much skill he may have; he has demonstrated a want of it in the treatment of the particular case. In such cases I think the proposition of the judge is right. The failure to use skill, if the surgeon has it, may be negligence; but when the treatment adopted is not in accordance with established practice, but is positively injurious, the case is not one of negligence, but of want of skill. It is said in *Slater* v. *Baker*, (*supra*,) that it is ignorance and unskillfulness to do contrary to the rule of the profession.

In ascertaining the meaning of the charge now under consideration, the whole is to be considered. The judge had told the jury that the surgeon did not undertake to cure the plaintiff, but only to bring to the case that ordi-

nary and reasonable degree of skill possessed by the average of the profession. He then proceeded to say that it had been said that if it be shown that the surgeon possesses that ordinary degree of skill, and that in the particular case in hand he exercises that skill with ordinary care and diligence, he then discharges his whole duty; such a rule, he thought, was calculated to mislead. He then told the jury he supposed it was entirely immaterial to the inquiry before them, whether the defendant, at the time he undertook the reduction of the dislocation, was or was not reputed to be, or was or was not, a skillful surgeon. The question then was, did he bring to the treatment of that particular case the degree of skill to which he had referred? This part of the charge is not excepted to. The learned judge then added the remark to which exception is taken, and says, the question is, what skill the defendant applied in the particular case. Now, by this charge, I understand the judge to say to the jury, the defendant is required to have an ordinary degree of skill—whether he has any more is wholly immaterial. In the case then, in hand, the question for the jury was, whether the defendant applied that degree of skill; and whether he applied it can only be ascertained by proof of the skill actually employed. If such is a reasonable construction of the charge, as I believe it to be, it is correct.

The next exception is to the charge, that if the defendant withdrew from the case while the plaintiff labored under a mistaken opinion that the joint had been properly reset, and was in a way to recover without further surgical aid, and that mistaken opinion was induced by his representations or his conduct, then he did not end his responsibility for the case by withdrawing from it. The instruction does not assume that the defendant had discharged his entire duty up to the time he abandoned the case. It is assumed that he had induced the plaintiff to so believe he had, and that belief was created either by the

acts or declarations of the defendant; and if it was so induced, his responsibility for the treatment of the case had not ended. If, by this instruction, the learned judge intended to say to the jury that the consent of the plaintiff that the defendant might abandon the case and not be liable for any damage which might thereafter happen to the arm, provided he had truthfully described its condition, I assent to it. That he so intended, I think is shown by a subsequent clause of the charge, in which he instructed the jury that as to what occurred after the plaintiff consented that the defendant might abandon the case, the defendant was not responsible. I have already expressed the opinion that the consent of the plaintiff, if obtained by false representations, was no protection to the defendant against liability for damages that had occurred before the consent was given. I am at a loss to understand what liability the learned judge intended to tell the jury the defendant was subjected to, if he misrepresented the condition of the arm and thereby obtained the plaintiff's consent that he might abandon the case. If he was to be responsible for any injury thereafter to happen by reason of want of surgical care, it was at variance with a subsequent clause, in which he told them that the defendant was not liable for what occurred after that time. The only construction I can put upon it is, that if the plaintiff's consent was obtained by fraud, the liability of the defendant for damages resulting from want of skill or care, prior to the plaintiff's consent that he might cease to treat the injury, did not terminate, and thus understood, the charge was right. But if by reason of the erroneous advice given by the defendant to the plaintiff as to the condition of her arm, she omitted to call in other surgical aid, whereby she sustained injury, the defendant would be liable, but not in this action. The court had nowhere intimated that the jury might allow for any such injury. The charge is not subject to the criticism made

Carpenter *v.* Blake.

by the defendant's counsel, that the liability of the defendant was not made to depend on the truth or falsity of the defendant's representations, but on the impression made on the plaintiff's mind by his representations as well as his acts. It is impossible to misunderstand the meaning of the judge. He intended to say that if the defendant had, by his acts or language, induced the plaintiff to believe that her elbow had been properly set, and was in a fair way to be cured, and such acts and representations were false or unfounded, her consent did not discharge him. That the representations were false or unfounded, the jury might find upon the evidence, and that finding cannot be disturbed.

The next exception is to the refusal to charge that the defendant had the right to cease to attend the plaintiff, after reasonable notice. The court had charged that if the plaintiff consented to the defendant's discharge, after notice of the actual condition of the arm, he was discharged. This was all the court was called on to say. The defendant had not assumed to discharge himself without asking the plaintiff's consent, and a charge as to the abstract right of the defendant was not called for, and the request was, therefore, properly refused. If there could be any difference in the defendant's liability when discharged with or without the plaintiff's consent, the request might have been proper, but he would be liable in either case for want of care or skill, unless consent should operate to release it.

The next exception is to the refusal to charge that if the negligence of the plaintiff contributed to the injury, the defendant was not responsible. The refusal was put on the ground that there was no evidence in the case of the plaintiff's negligence, and I concur with the learned judge in the position. If there was any, it was the result of ignorance on the part of the plaintiff, as to how the limb should be treated; that ignorance, it was the duty of the

defendant to remove, by giving her such instructions as to its care, as would enable her not only to prevent injury, but to treat it so as to facilitate cure.

The two remaining exceptions are to the refusal to charge that if the plaintiff discovered anything out of shape, or out of place, before and after the defendant ceased to have charge of the arm, it was negligence in the plaintiff to omit to inform the defendant in the one case, or some other surgeon, in the other, of the defect. The only evidence on which to predicate these requests is that of the plaintiff, who testifies that at the time of the injury, and again in some two weeks afterwards, she discovered a protuberance at the elbow. Whether she understood that this indicated any defect in the reduction of the luxation, we do not know; but she says that on several occasions, before as well as after the defendant ceased to have care of her arm, she insisted to him that the joint had not been set. He repeatedly assured her that it had, and an objection now comes with bad grace from him, that she did not disclose to a surgeon of some twenty years practice, a fact that should have been discovered by a person of the most ordinary observation.

The defendant's counsel objects to the use by the judge, in his charge, of the remark, that a surgeon is required to exercise the "average skill" of his profession, and insists that it was calculated to mislead the jury. The true standard of qualification, as he insists, is "reasonable and ordinary skill." I understand the charge to use the phrase employed as equivalent to the one employed by counsel. In another part of the charge, the judge says he (the surgeon) contracts that he will bring to the case that ordinary and reasonable degree of skill which is possessed by the average of his profession. Again, he says the rule is, that he undertakes to bring to the case the exercise of that reasonable degree of skill ordinarily possessed by the members of the profession. He then adds the expression

Carpenter *v.* Blake

complained of by the defendant's counsel: "I think it the reasonable rule that he is required to exercise the average skill of his profession." It seems to me to be impossible to misunderstand this part of the charge. The judge lays down the rule as it is given by writers on the law, and by the judges in their instructions to juries, and a change of phraseology does not change the rule; at all events, it is obvious that the judge, in the last sentence cited, did not intend to modify or vary the rule as it had previously been laid down by him.

Much was said on the argument, as to the right of a surgeon to exercise his own judgment as to the mode of treatment he will adopt in the case of a wound, or of a disease which he is called upon to treat; that neither the rules prescribed by writers, nor those acted upon by other physicians or surgeons, can apply to every case, and hence latitude must be allowed for the application of remedies which the attending physician or surgeon has found to be beneficial. If this is not allowed, the argument is, that all progress in the practice of surgery or physic must cease, and the afflicted lose altogether the benefits of experience and of remedies that science furnishes for the alleviation of human suffering. It must be conceded that if a surgeon is bound, at the peril of being liable for malpractice, to follow the modes of treatment which writers and practitioners have prescribed, the patient may lose the benefits of recent improvements in the treatment of diseases, or discoveries in science, by which new remedies have been brought into use; but this danger is more apparent then real. Some standard, by which to determine the propriety of treatment, must be adopted; otherwise experience will take the place of skill, and the reckless experimentalist the place of the educated, experienced practitioner. If the case is a new one, the patient must trust to the skill and experience of the surgeon he calls; so must he if the

injury or the disease is attended with injury to other parts, or other diseases have developed themselves, for which there is no established mode of treatment. But when the case is one as to which a system of treatment has been followed for a long time, there should be no departure from it, unless the surgeon who does it is prepared to take the risk of establishing, by his success, the propriety and safety of his experiment.

The rule protects the community against reckless experiments, while it admits the adoption of new remedies and modes of treatment only when their benefits have been demonstrated, or when, from the necessity of the case, the surgeon or physician must be left to the exercise of his own skill and experience.

The judgment is right and must be affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, May 1, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]